Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| YADIRA ABOUOMAR RIVERA<br><br>Apelante<br><br>v.<br><br>AXESA SERVICIOS DE INFORMACIÓN S. EN C.<br><br>Apelado | KLAN202301067 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2019CV12136 (504)<br><br>Sobre: Despido injustificado (Ley 80) |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Comparece ante nos la señora Yadira Abouomar Rivera ("Sra. Abouomar Rivera" o "Apelante") mediante *Apelación*, presentada el 29 de noviembre de 2023. Nos solicita que revoquemos la *Sentencia Sumaria* emitida y notificada el 8 de septiembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro *a quo*" o "foro apelado"). Mediante el referido dictamen, el foro *a quo* declaró *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por las co-demandadas Axesa Servicios de Información, S. en C. ("Axesa") y Caribe Media, Inc. ("Caribe"), (en conjunto, "los Apelados").

Por los fundamentos expuestos a continuación, **confirmamos** la *Sentencia Sumaria* apelada.

## I.

El 22 de noviembre de 2019, la Sra. Abouomar Rivera presentó una *Demanda* sobre despido injustificado, al amparo de la *Ley de Indemnización por Despido sin Justa Causa*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a, *et seq.* ("Ley Núm. 80"), contra Axesa y Caribe. En síntesis, alegó que había

trabajado para la compañía Axesa por más de quince (15) años, hasta que el 10 de enero de 2019 fue despedida sin justa causa. Señaló, además, que su despido se realizó en pleno proceso de su tratamiento de cáncer y que no recibió indemnización alguna por su despido. A raíz de ello, solicitó al amparo de la Ley Núm. 80, *supra*, una compensación de $199,747 en concepto de mesada.

Por su parte, el 13 de enero de 2020, Axesa argumentó en su *Contestación a Demanda*, que el puesto de Gerente de Ventas que ocupaba la Apelante fue eliminado como parte de una restructuración *bona fide* de la compañía. Sostuvo que la compañía había sufrido una merma de clientes a consecuencia de una reducción millonaria en su volumen de ventas, la cual se agravó con el paso del Huracán María.[1] Como estrategia para abatir la disminución de ingresos, Axesa despidió a varias personas, incluyendo empleados con la misma clasificación que la Sra. Abouomar Rivera. Añadió que la Apelante conocía la situación económica que atravesaba Axesa y que había sido temeraria al establecer que fue despedida en pleno proceso de cáncer, puesto que la compañía sufragó los gastos de plan médico por un año luego de su despido. Asimismo, Caribe presentó *Contestación a Demanda,* en la que alegó que es un ente jurídico separado e independiente a Axesa, por lo cual, en ningún momento figuró como patrono de la Apelante.

Luego de varios trámites procesales, el 12 de febrero de 2022, los Apelados presentaron *Moción de Sentencia Sumaria,* en la que solicitaron la desestimación de la demanda en su totalidad. En síntesis, los Apelados alegaron que no existía controversia sobre que Axesa llevaba años en un proceso de restructuración para

---

[1] Las Apeladas alegaron en su contestación a la demanda que luego del paso del Huracán María muchos de sus clientes cerraron sus puertas. Esto resultó en una merma en ventas que agravó la situación económica que enfrentaba Axesa.

atemperarse a los cambios tecnológicos y con el paso del Huracán María se agravó su situación económica, lo cual dio lugar a varios despidos, incluido el de la Apelante. Señalaron que la Apelante admitió en su deposición tener conocimiento del proceso de restructuración de la compañía y su despido estuvo justificado, de conformidad con el Artículo 2 de la Ley Núm. 80, *supra.* Para sustentar sus argumentos, incluyeron como anejo informes financieros, con el fin de demostrar como Axesa llevaba experimentando una disminución paulatina en sus ingresos desde el 2012, que a su vez provocó una serie de cambios operacionales.[2] A su vez, Caribe alegó que no figuró como patrono de la Apelante.

Por su parte, el 9 de diciembre de 2022, la Sra. Abouomar Rivera presentó *Moción de Sentencia Sumaria,* en la cual solicitó que se dictará sentencia sumaria a su favor. Sostuvo que los Recurridos no han evidenciado que Axesa tenía un plan de restructuración, ni presentaron evidencia de los ahorros logrados, por lo que su despido fue producto de un mero capricho y arbitrariedad. Señalaron que antes y después del despido, los Recurridos contrataron empleados, lo cual derrota la defensa sobre que la compañía quería ahorrarse un millón de dólares. Añadió que Caribe y Axesa eran un solo patrono, puesto que Caribe fue quien tomó la decisión y ejecutó el despido de la Apelante. Cabe destacar que ambas partes presentaron sus respectivas oposiciones a las solicitudes de sentencia sumaria sometidas ante el foro primario.

Evaluadas las mociones de sentencia sumaria ante su consideración, el 8 de septiembre de 2023, el foro *a quo* dictó la *Sentencia Sumaria* apelada, en la que declaró *Ha Lugar* la *Moción de Sentencia Sumaria* de la parte Apelada y *No Ha Lugar* la *Moción de Sentencia Sumaria* sometida por la Sra. Abouomar Rivera. En su

---

[2] *Exhibit* D de la *Moción de Sentencia Sumaria* de Axesa.

dictamen, el foro primario determinó que no existe controversia sobre los siguientes hechos:

1. El 1 de julio de 2003 Abouomar Rivera comenzó a trabajar por tiempo indefinido para Axesa.

2. El 10 de enero de 2019 Axesa despidió a Abouomar Rivera.

3. Mientras laboró para Axesa, Aboumar Rivera ocupó varias posiciones y al momento de su despido esta ocupaba el puesto de Gerente de Ventas.

4. Axesa es una compañía que ofrece servicios de publicidad digital e impresa en Puerto Rico para conectar a los negocios con los consumidores. A través de su portafolio de productos, Axesa provee a sus clientes servicios de búsquedas locales para satisfacer todas sus necesidades de información sobre productos y servicios en Puerto Rico.

5. La W-2 de Abouomar Medina correspondiente al año 2017 contiene bajo la información del patrono el nombre de Axesa Servicios de Información S en C".

6. Cuando la demandante fue despedida de Axesa el 10 de enero de 2019, su plan médico continuó en vigor a través del beneficio de COBRA, sufragado por Axesa durante un año posterior a la fecha de su despido.

7. Como consecuencia del paso del huracán María por Puerto Rico en septiembre de 2017, la falta de electricidad, agua potable y servicios esenciales de salud ocasionó el cierre temporero y permanente de miles de establecimientos comerciales en Puerto Rico, incluyendo las operaciones de Axesa, lo que a su vez se tradujo en una reducción significativa en las ventas de sus productos.

8. Para el 3 de octubre de 2017, y solamente hasta las 2:00 p.m., el edificio donde ubica Axesa en la avenida Américo Miranda comenzó a operar con planta eléctrica y agua potable. A partir del 11 de octubre de 2017 Axesa comenzó a operar con algunos empleados, únicamente hasta las 3:00 p.m. El horario se fue extendiendo gradualmente y a partir del 4 de diciembre de 2017 el edificio comenzó a operar hasta las 5:00 p.m.

9. Axesa no pudo comenzar con la Campaña Metro en el tiempo planificado porque estaba fuera de operaciones como consecuencia del paso del Huracán María por Puerto Rico.

10. Durante las semanas en que Axesa estuvo cerrado, no se registró venta nueva, ni se pudieron renovar cuentas existentes.

11. Los libros de publicidad Business Register, Shoppers Magazine y USVI fueron descontinuados como consecuencia del paso del Huracán María, lo que resultó en pérdida de ingresos.

12. Por otro lado, durante tres (3) meses luego del paso del huracán María, Axesa no pudo facturar el libro de publicidad Metro, ya que se comenzó a renovar luego de dicho periodo como consecuencia del paso del huracán.

13. A raíz del paso del huracán María, Axesa experimentó pérdida de clientes. Las prioridades de estos cambiaron drásticamente y sus presupuestos se dirigieron a

salvaguardar las necesidades de sus negocios limitando las oportunidades de Axesa de hacer negocios con estos.

14. Desde el año 2012 hasta el año 2017 Axesa ha experimentado una reducción en su ingreso bruto/volumen de ventas, por la cantidad de $13,836,174. En el año 2012, Axesa registró un ingreso bruto/volumen de ventas de $36,700,967, reduciéndose gradualmente a través de los años hasta llegar a $22,864,793 en el 2016. El ingreso bruto/volumen de ventas para el año 2017 fue de en $19,626,295, para una reducción, comparado con el ingreso bruto del año 2016, de $3,238,498.

15. El ingreso neto se vio reducido de $5,373,316 en el año 2012 a $3,289,825 en el año 2016, para una reducción total de $2,083,491. El ingreso neto para el año 2017 fue de $1,316,774, para una reducción -comparado con el ingreso neto del año 2016- de $766,717.

16. Para el mes de agosto de 2017, Axesa cobró de sus clientes la suma de $1,461,148. Sin embargo, en el mes de septiembre cobró $1,054,707, $406,440 menos que el mes anterior.

17. En el mes de octubre de 2017, los cobros fueron aun menores, por la suma de $767,261, $287,447 menos que el mes anterior.

18. El ingreso neto se redujo de $1,316,774 en el año 2017 a $453,285 en el año 2018, para una reducción total de $863,489 o 65.6%.

19. El volumen de ventas de Axesa para el 2018, en comparación con el mismo periodo en el año 2017, se redujo de $19,626,295 a $13,832,749, para una reducción de $5,793,546 o 29.5%.

20. Como resultado de las consecuencias del paso del huracán María por Puerto Rico según antes detalladas, y del impacto negativo que ello tuvo en sus ya deterioradas finanzas, Axesa comenzó un proceso paulatino de reorganización de sus operaciones.

21. Axesa ha eliminado un sinnúmero de plazas con el propósito de reducir gastos operacionales y así poder afrontar la reducción en su volumen de ventas e ingreso neto.

22. Al 13 de octubre de 2017, fueron suspendidos de empleo y sueldo 33 vendedores de los 55 que tenía Axesa a esa fecha, quedándose con una fuerza de ventas de 22 vendedores.

23. Transcurridos tres (3) meses luego de la suspensión de empleo, efectivo el 11 de enero de 2018, todos los vendedores suspendidos quedaron despedidos pues no se reintegró a ninguno a su puesto a esa fecha.

24. El impacto en las finanzas de Axesa debido a la reducción de personal realizada en octubre de 2017 se refleja en una reducción anual en gastos operacionales de $2,395,143.71.

25. Cuatro (4) meses después, es decir, el 24 de mayo de 2018, se eliminaron tres (3) plazas del Departamento de Operaciones.

26. El 14 de septiembre de 2018 se eliminaron seis (6) plazas. En ese momento, se eliminaron dos plazas en el Departamento de Ventas, dos plazas en el Departamento de Administración, una plaza en el Departamento de Finanzas y una plaza en el Departamento de Mercadeo.

27. Al 9 de enero de 2019, un (1) día antes del despido de la demandante, Axesa tenía veintidós (22) vendedores.

28. Continuando con la eliminación de plazas, el 10 de enero de 2019 se eliminaron seis (6) plazas gerenciales.

29. Con la eliminación de estas seis (6) plazas, Axesa alcanzó un ahorro aproximado anual de $1,010,000.

30. La plaza de Gerente de Ventas se eliminó y se mantuvo eliminada por más de tres (3) años.

31. La Sra. Paniagua es la CEO de Caribe Media y de Axesa, y es miembro del "Board" de directores de Axesa y Caribe Media.

32. La Sra. Paniagua participó en la decisión que provocó el despido de Abouomar Rivera.

33. La participación de la Sra. Paniagua en la decisión de despedir a Abouomar Rivera fue identificar "cost savings" por un millón de dólares ($1,000,000.00) y velar por el mantenimiento de la operatividad del negocio.

34. La Sra. Paniagua declaró que se eliminaron plazas para llegar a "ahorros de costo" de un millón de dólares ($1,000,000).

35. La Sra. Paniagua declaró que luego del despido de la demandante en febrero de 2019, se presentó el presupuesto y se había logrado la meta de "cost savings" de un millón de dólares ($1,000,000).

En esencia, el foro primario concluyó que no existía controversia sobre las dificultades económicas que enfrentó Axesa, lo cual dio lugar al despido de la Apelante. El foro primario reconoció que, según dispone *Segarra Rivera v. Int'l Shipping Agency, Inc.,* los patronos pueden modificar su forma de hacer negocios para poder optimizar sus recursos y aumentar ganancias, esto último, sin la necesidad de presentar un plan de reestructuración específico. Determinó que basta con la presentación de prueba suficiente de que la decisión fue una válida ante las circunstancias que enfrenta la empresa. Señaló que Axesa logró demostrar las razones que lo llevó a reducir su plantilla laboral y que el puesto de la Apelante fue eliminado por completo, lo cual justificó su despido. Además, por entender que el despido fue justificado, el foro primario no consideró necesario determinar si Caribe era o no patrono de la Apelante.

Inconforme, la Sra. Abouomar Rivera presentó *Reconsideración* el 22 de septiembre de 2023 la cual fue declarada *No Ha Lugar,* mediante *Resolución* emitida y notificada el 30 de

octubre de 2023. Insatisfecha aún, el 29 de noviembre de 2023, acudió ante esta Curia y alegó la comisión de los siguientes errores:

> Erró el TPI al obviar las alegaciones de la contestación a la demanda de la parte demandada y establecer que el despido de la Sra. Abouomar fue justificado al entender que Axesa no tiene que demostrar la reorganización y/o restructuración alegada de forma alguna.
>
> Erró el TPI al no considerar la presunción de despido injustificado que le favorece a la Sra. Abouomar.
>
> Erró el TPI al considerar hechos controvertidos para fundamentar su determinación de Sentencia Sumaria.
>
> Erró el TPI al no considerar los hechos materiales no controvertidos que establecen la relación laboral de Caribe Media con la Sra. Abouomar y que Caribe Media y Axesa son un único patrono frente a la Sra. Abouomar.

El 6 de diciembre de 2023, esta Curia emitió *Resolución* en la que le concedió un término de treinta (30) días a la parte Apelada para presentar su oposición al recurso. En cumplimiento de orden, el 8 de enero de 2024, la parte Apelada presentó su *Alegato en Oposición.*

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

## II.

### A. *Sentencia Sumaria*

La sentencia sumaria es un mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Birriel Colón v. Supermercado Los Colobos e Integral Assurance Company,* 213 DPR ___ (2023), 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 979 (2022). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea

sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*. No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, se demuestre que no existe una controversia real sobre los hechos y solo reste aplicar el derecho. *Birriel Colón v. Supermercado Los Colobos e Integral Assurance Company, supra; SLG Szendrey v. Consejo de Titulares,* 184 DPR 133, 138 (2011); *Ramos Pérez v. Univisión de Puerto Rico, Inc.,* 178 DPR 200, 214 (2010).

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. v. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo estableció "el estándar específico" que debe utilizar este Foro al "revisar denegatorias o concesiones de Mociones de Sentencia Sumaria". A esos efectos, el Tribunal dispuso que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018), citando a *Meléndez González et al. v. M. Cuebas, supra,* págs. 118-119.

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra.* "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Supermercado Los Colobos e Integral Assurance Company, supra,* citando a *Meléndez González et al. v. M. Cuebas, supra.*

### B. *Ley Sobre Despidos Injustificados*

La *Ley de Indemnización por Despido sin Justa Causa*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada,[3] ("Ley Núm. 80"), tiene como propósito proteger el derecho de los trabajadores ante las acciones arbitrarias y caprichosas de los patronos. *Segarra Rivera v. International Shipping Agency, Inc.,* 208 DPR 964 (2022); *León Torres v. Rivera Lebrón,* 204 DPR ___ (2020), resuelto el 29 de febrero de 2020, pág. 16. Por su carácter reparador, esta Ley debe ser interpretada de manera liberal y favorable al empleado. *Jusino et al.* v. *Walgreens,* 155 DPR 560, 571 (2001). El referido estatuto le impone el pago de indemnización conocida como la mesada al todo patrono que despida sin justa causa a un empleado. 29 LPRA sec. 185a. Para recibir dicha compensación, el empleado despedido debe cumplir con los siguientes requisitos: (1) ser un empleado contratado por tiempo indeterminado; (2) recibir una remuneración;

---

[3] 29 LPRA sec. 185a *et seq.* La *Ley de Transformación y Flexibilidad Laboral,* Ley Núm.4 de 26 de enero de 2017, 29 LPRA sec. 121 *et seq.,* ("Ley Núm. 4-2017"), cuya vigencia es inmediata, enmendó varios artículos de la Ley, Ley Núm. 80, *supra.* No obstante, en su Art. 1.2 dispone que su aplicación será prospectiva. En vista de que el despido de la Apelante surgió luego de la aprobación de la Ley Núm. 4-2017, *supra.*

y (3) ser despedido de su puesto sin justa causa. *Íd*; *Torres Álvarez* v. *Centro de Patología Avanzada*, 193 DPR 920, 929 (2015); *Orsini García* v. *Srio. de Hacienda*, 177 DPR 596, 620-621 (2009).

El despido del empleado ocurre cuando el patrono, de forma unilateral, rompe el contrato que celebró con el empleado. *Díaz* v. *Wyndham Hotel Corp.*, 155 DPR 364, 374 (2001). Ahora bien, no todo despido conlleva una reclamación por despido injustificado. A tales efectos, el Art. 2 de la Ley Núm. 80, *supra,* define "justa causa" para un despido como "[a]quella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono". 29 LPRA sec. 185b. También, se considerarán justa causa para el despido "[a]quellas razones que afecten el buen y normal funcionamiento de un establecimiento [...]". *Íd.* A su vez, el Art. 2 de la precitada Ley establece ciertas circunstancias o actos que afectan el buen y normal funcionamiento de un establecimiento, sin que se entienda como una lista taxativa de circunstancias, a saber:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) **Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la**

> **competitividad o productividad del establecimiento.**
> *Íd.* (Énfasis nuestro).

Las primeras tres circunstancias son conductas específicamente concernientes al comportamiento del empleado, mientras que el resto responden al cierre, reorganización o reducción de la empresa. *Segarra Rivera v. International Shipping Agency, Inc., supra.* Con relación a esto, la Ley Núm. 80, *supra,* dispone que "[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o **sin razón relacionada con el buen y normal funcionamiento del establecimiento**". 29 LPRA sec. 185b (2017); *León Torres* v. *Rivera Lebrón, supra,* pág. 17; *Roldán Flores* v. *M. Cuebas,* 199 DPR 664 (2018).

En *Segarra Rivera v. Int'l Shipping Agency, Inc., supra,* el Tribunal Supremo analizó los contornos de un despido al amparo de los incisos (d), (e) y (f) del Art. 2 de Ley Núm. 80, *supra.* "[L]as circunstancias previstas en estos tres incisos giran en torno a las actuaciones del patrono sobre la administración de su negocio, y principalmente ocurren por razones de índole económica que enfrenta su operación diaria". *Íd,* pag. 984. En estos casos, la Ley permite a los patronos a cesantear a sus empleados sin la obligacion de pagar una indemnización, si enfrentan alguna de las circunstancias antes descritas. Como limitación a esta norma, es que los patronos vendrán obligados a "retener con preferencia en el empleo al empleado con más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos". *Íd.* Véase, además, 29 LPRA sec. 185c. **"Sin embargo, la retención por antigüedad tiene que ser en la misma clasificación ocupacional y no entre clasificaciones ocupacionales distintas."** *Íd,* pág. 984-985. (Énfasis nuestro).

En cuanto a los incisos (e) y (f) del Artículo 2 de la precitada Ley Núm. 80, *supra,* nuestro máximo foro expresó lo siguiente:

[...] siempre y cuando responda a una reestructuración *bona fide,* el patrono puede "modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad". Así, sostuvimos que los cambios en la empresa pueden acarrear el despido y el reclutamiento simultáneo de personal debido a que "las reformas en ocasiones **exigen prescindir de labores hasta entonces útiles para el funcionamiento del negocio y la incorporación de posiciones nuevas con destrezas diferentes necesarias para lograr unas metas empresariales actualizadas**". No obstante, indicamos que **para que el patrono pueda justificar el despido al amparo del inciso (e) —por reorganización—debe "presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad"**.

Por otra parte, en relación con el Art. 2(f) de la Ley Núm. 80, *supra*, esbozamos que "la situación económica provocada por **la baja en la producción, ventas o ganancias en una empresa puede llevar al patrono a tomar medidas necesarias para limitar los gastos tales como disminuir la plantilla laboral**". A su vez, explicamos que, según este inciso, no "toda merma en ventas o ganancias se tradu[ce] en justa causa para un despido. Por el contrario, esta aplicará únicamente a aquellas situaciones en las cuales la aludida **disminución sea una sustancial** al punto que **atente contra la continuidad de la empresa**". Así pues, si el patrono pretende justificar el despido al amparo del Art. 2(f) —por disminución de ganancias— **debe presentar evidencia que acredite "la alegada disminución en la producción, ventas o ganancias"**. En ese sentido indicamos que el patrono debe establecer un nexo causal entre las circunstancias económicas de la empresa y la necesidad del despido.

A modo ilustrativo, resaltamos que recientemente nuestra Asamblea Legislativa promulgó la Ley Núm. 4-2017, *supra,* mejor conocida como la Ley de Transformación y Flexibilidad Laboral, la cual enmendó la Ley Núm. 80, *supra*, para entre otras cosas, ampliar los criterios para llevar a cabo una reorganización o reducción de personal. Ello, con el fin de añadir una nueva circunstancia al inciso (f) que permitiera a la empresa una reducción de empleados con el propósito de **aumentar la competitividad o productividad del establecimiento.** (Énfasis en original). (Citas omitidas).

En cuanto a la presunción establecida en la Ley Núm. 80, *supra,* previo a las enmiendas de la Ley Núm. 4-2017, *supra,* el Tribunal Supremo estableció lo siguiente:

[...] como parte del estado de derecho previo a la aprobación de la Ley Núm. 4-2017, *supra,* cuando un empleado instaba un pleito al amparo de la Ley Núm. 80, *supra*, se activaba la presunción de que el despido fue injustificado y recaía sobre el patrono la obligación de rebatirla. Ahora bien, esa presunción se estableció para facilitar al empleado probar su caso, **más no relevarlo de la necesidad de presentar evidencia alguna para probar sus** alegaciones. (Énfasis en

original). (Citas omitidas).

**III.**

En el presente recurso, la parte Apelante nos solicita que revoquemos una *Sentencia* dictada sumariamente por el foro *a quo*. En vista de ello, le corresponde a este foro revisor realizar un examen *de novo,* tanto de las solicitudes de sentencia sumaria presentadas por ambas partes y sus anejos, así como sus respectivas oposiciones. Efectuado tal ejercicio, resolvemos que tanto la parte Apelante como las Apeladas cumplieron esencialmente con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra.*

Ahora bien, nos corresponde revisar si en realidad existen hechos materiales en controversia y, de haberlos, exponer concretamente cuáles hechos materiales encontró el foro *a quo* que están en controversia y cuáles están incontrovertidos. Véase *Roldán Flores v. M. Cuebas et al., supra.* Evaluados los escritos presentados por las partes, así como los anejos incluidos con las solicitudes de sentencia sumaria, acogemos las determinaciones de hechos emitidas por el foro apelado y la hacemos formar parte del presente dictamen, por entender que no existe controversia sobre tales hechos. Por tal razón, solo nos resta determinar si el foro primario aplicó correctamente el derecho a los hechos.

Aclaramos que, en aras de esbozar nuestro análisis de manera coherente, se atenderán los señalamientos de error de la parte Apelante en un orden distinto al presentado. Comenzaremos con el primer y tercer señalamiento de error. En estos, la parte Apelante alega que el foro primario acogió los hechos propuestos por la parte Apelada en su solicitud de sentencia sumaria, a pesar de que no estaban sustentados en la prueba. Señala que, además, falló el foro primario al no justificar por qué no adoptó los hechos propuestos en su solicitud de sentencia sumaria. Argumenta que el foro primario

erró al establecer que el despido fue justificado por entender que no era necesario que las Apeladas presentaran prueba que acreditara la existencia de un plan de reorganización. Alega la Sra. Abouomar Rivera que las Apeladas no produjeron evidencia acreditativa sobre un proceso de reorganización *bona fide* o de su necesidad para ello, como exige *Segarra Rivera v. Int'l Shipping Agency, Inc.*, *supra,* y las *Guías para la Interpretación de la Legislación Laboral del Departamento del Trabajo y Recursos Humanos*, DTRH (2019), ("Guías"). No le asiste la razón.

En primer lugar, debemos establecer que este Tribunal ha revisado, *de novo,* las solicitudes de sentencia sumaria, y sus anejos, así como sus respectivas oposiciones. Tal ejercicio nos lleva a concluir que las determinaciones de hechos emitidas en la *Sentencia* apelada fueron sustentadas con la prueba que obra en el expediente, la cual es la misma que estuvo ante la consideracion del foro primario. Añadimos que nuestro ordenamiento no obliga al foro primario a justificar por qué rechazó los hechos propuestos por las partes como no controvertidos. De conformidad con la Regla 42.2 de Procedimiento Civil, *supra,* R. 42.2, **"[n]o será necesario especificar los hechos probados y consignar separadamente las conclusiones de derecho[,]** al resolver mociones bajo las Reglas 10 o 36.1 y 36.2". (Énfasis nuestro). Es decir, aquellos pleitos que hayan sido resueltos por la vía sumaria, **solamente se exige que el foro sentenciador aplique el derecho a los hechos sobre lo que no existen controversia.**

En cuanto a las alegaciones sobre que los Apelados no demostraron la existencia de un plan de reorganización *bona fide,* la Apelante hace una interpretación errónea del derecho citado. Como ya vimos, en *Segarra Rivera v. Int'l Shipping Agency, Inc.*, *supra,* el Tribunal Supremo aclaró que, cuando un patrono justifique su despido en el inciso (e) del Art. 2 de la Ley Núm. 80,

*supra*, aunque es necesario presentar prueba acreditativa de la necesidad de una restructuración, **el estatuto no requiere que la prueba sea de una forma particular o específica.** Dicho de otra manera, la Ley Núm. 80, *supra,* no requiere que se presente un plan en el cual se detalle de alguna manera particular los cambios organizacionales a llevarse a cabo por el patrono, ni requiere la presentación un estudio que evidencie la reducción en plantilla laboral como exige la Apelante. Solo se exige prueba "acreditativa del plan de reorganización implantado, así como su utilidad". *Segarra Rivera v. Int'l Shipping Agency, Inc.*, *supra.*

Además, aunque las Guías requieren un estudio interno cuando la reducción en plantilla se debe al deseo del patrono de aumentar su competitividad o productividad, la jurisprudencia del Tribunal Supremo claramente estableció los parámetros para probar que el despido fue justificado en estas circunstancias. Por tanto, al no tener que cumplir con requisitos de forma, ni exigencias particularizadas de ley, la determinación de suficiencia de prueba acreditativa queda sujeta a la apreciación y credibilidad que le otorgue el juzgador.

De nuestro examen del expediente, es irrefutable que Axesa llevaba años experimentando una reducción constante en ventas, por lo que los despidos obedecieron a un plan de restructuración, y no a un mero capricho o arbitrariedad. Es evidente que la reorganización fue una manera *bona fide* de adaptarse a las realidades del mercado, estrategia permisible por nuestro ordenamiento jurídico. En vista de ello, resolvemos que el foro inferior aplicó correctamente el derecho a los hechos y concluyó acertadamente que el despido de la Sra. Abouomar Rivera obedeció a medidas de restructuración de la compañía Axesa. Por tanto, resolvemos que el primer y tercer error no se cometió.

En su cuarto señalamiento de error, la Apelante señala que erró el foro primario al determinar que no era necesario discutir si Caribe Media era o no patrono de la Sra. Abouomar Rivera. Alega que se sustentó mediante prueba que Caribe era patrono de la Apelante. Señala que procedía que el foro primario entrara en los méritos de la alegación e hiciera dicha determinación, porque al igual que Axesa, a Caribe le correspondía rebatir la presunción de despido injustificado.

En vista de que hemos determinado que los Apelados lograron demostrar que el despido de la Apelante estuvo justificado, a la luz de las dificultades económicas que enfrentaba Axesa y el subsiguiente proceso de restructuración *bona fide*, resultaría superfluo tener que determinar quién sería responsable de pagar una mesada a la cual no tiene derecho la Apelante.

Finalmente, en su segundo señalamiento de error, la Sra. Abouomar Rivera alegó que el foro inferior erró al no considerar la presunción de despido injustificado que le favorece. En el presente caso, el despido de la Apelante fue realizado el 10 de enero de 2019, luego de la aprobación de la Ley Núm. 4-2017, *supra*, la cual enmendó las disposiciones de la Ley Núm. 80, *supra*. Su texto alteró el lenguaje de la Ley Núm. 80, *supra*, eliminando el lenguaje alusivo a la presunción de que el despido fue injustificado y recaía sobre el patrono la obligación de rebatirla. Sin embargo, somos del criterio que dicha normativa está vigente, sin embargo, el empleado no esta relevado de presentar evidencia que tienda a demostrar que su despido fue uno caprichoso e injustificado. Véase *Segarra Rivera v. Int'l Shipping Agency, Inc.*, *supra*.

**IV.**

Por los fundamentos antes expuestos, **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones